IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:15-CV-68-BO

| | | |
|---|---|---|
| NATIONAL RAILROAD PASSENGER CORP., and CSX TRANSPORTATION, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| GUY M. TURNER, INCORPORATED, a/k/a TURNER TRANSFER, | ) ) ) | |
| Defendant/Third-Party Plaintiff, | ) ) | O R D E R |
| v. | ) ) ) | |
| NORTH CAROLINA DEPARTMENT OF TRANSPORTATION and NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, DIVISION OF STATE HIGHWAY PATROL, | ) ) ) ) ) | |
| Third-Party Defendants. | ) ) | |

This matter is before the court on a motion to compel filed by Defendant Guy M. Turner, Inc. ("Defendant"). [DE-33]. Plaintiffs National Railroad Passenger Corp. ("Amtrak") and CSX Transportation, Inc. ("CSXT") (altogether "Plaintiffs") have responded to the motion. [DE-38, -39]. The matters raised in the motion are ripe for decision. For the reasons that follow, Defendant's motion is allowed in part and denied in part.

## I. BACKGROUND

According to Plaintiffs' complaint, filed May 1, 2015, this case arises from the collision of an oversized and overweight tractor-trailer, owned and operated by Defendant, with an Amtrak passenger train on a track owned by Defendant CSXT. Compl. [DE-1] ¶ 8. The collision occurred

on March 9, 2015 in Halifax, North Carolina, while Defendant was stopped on a railroad crossing located on N.C. Highway 903 while attempting to complete a left turn onto U.S. Highway 301 North Bypass. *Id.* ¶¶ 21, 25. Plaintiffs allege the driver of Defendant's vehicle knowingly blocked the railroad crossing in disregard of a sign expressly stating "Do Not Stop on Tracks" and failed to notify Plaintiffs prior to the accident that the vehicle was blocking the crossing. *Id.* ¶¶ 8, 23, 25-27. As a result, an Amtrak train collided with Defendant's vehicle, and the locomotive and baggage car of the train derailed. *Id.* ¶¶ 31-32. Plaintiffs have alleged the following causes of action against Defendant: negligence and gross negligence stemming from the alleged acts Defendant, its employee driver, and two employees or agents escorting the tractor trailer involved in the collision, *id.* ¶¶ 37-49; negligent and grossly negligent hiring, supervision, and entrustment based on allegations that Defendant's driver was incompetent or unfit to operate the tractor trailer, *id.* ¶¶ 50-63; punitive damages based on allegations that Defendant willfully sent its driver on the route after recklessly failing to properly inspect the route to ensure there was adequate clearance for its vehicle, *id.* ¶¶ 64-71; and indemnity or contribution for damages sought by Amtrak passengers, crew, and others against Plaintiffs arising from the collision, *id.* ¶¶ 72-75.

On June 3, 2015, Defendant answered the complaint denying liability, asserting affirmative defenses, and bringing the following counterclaims against Plaintiffs: negligence and gross negligence, based on their respective failures to ensure the railroad crossing was safe for travel by approaching vehicles, failure to provide sufficient warnings of approaching trains and failure to implement technologically feasible warning systems to prevent collisions with vehicles traversing the crossing, Answer & Countercls. [DE-10] at 16-19; and indemnity or contribution for damages sought by Amtrak passengers, crew, and others against Defendant arising from the collision, *id.* at

19-20.

On December 28, 2015, Defendant filed a third-party complaint impleading the North Carolina Department of Transportation ("NCDOT") and North Carolina Department of Public Safety, Division of State Highway Patrol ("NCSHP"). Third Party Compl. [DE-32-1]. Defendant seeks contribution against NCDOT for its alleged failure to warn Defendant of the particular route hazards and against NCSHP for its alleged failure to train its troopers to recognize route hazards and for their trooper's failure to call the number posted at the crossing to report an emergency. *Id.* ¶¶ 16-17, 23, 25-32.

On October 26, 2016, Plaintiffs served their responses to Defendant's First Set of Interrogatories and First Requests for Productions of Documents. Def.'s Mot., Exs. A-D [DE-33-1 through -33-4]. From the correspondence provided with the motion, it appears that counsel conferred regarding Plaintiffs' discovery responses Defendant believed were inadequate, a majority of which are the subject of the motion to compel. *Id.*, Ex. E & F [DE-33-5, -33-6].

## II. ANALYSIS

### A. Standard of Review

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides the general rule regarding the scope of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Equal Emp't Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06CV00889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007) (unpublished) (internal quotation marks, alterations, and citations omitted); *Equal*

3

*Emp't Opportunity Comm'n v. New Hanover Regional Med. Ctr.*, No. 7:09-CV-85-D, 2010 WL 4668957, at *3 (E.D.N.C. Nov. 9, 2010) (unpublished); *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund., Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Rule 37 of the Federal Rules of Civil Procedure provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to answer an interrogatory under Rule 33 or fails to produce or make available for inspection requested documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). For purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). However, the Federal Rules also provide that

> the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). Additionally, "the court has 'substantial discretion' to grant or deny motions to compel discovery." *English v. Johns*, No. 5:11-CT-3206-D, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014) (unpublished) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). Finally, the party seeking the court's protection from responding to discovery must make a particularized showing of why discovery should be denied, and

4

conclusory or generalized statements fail to satisfy this burden as a matter of law. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402-03 (4th Cir. 2003).

**B.    Discussion**

Defendant has moved the court to compel responses to 28 of its written discovery requests to Plaintiffs Amtrak and CSXT, and the court will consider each of the requests in the order they are presented in Defendant's brief [DE-34].

Interrogatory No. 4 to Amtrak

Defendant seeks the identification of all prior close calls or near accidents involving the subject crossing, the subject tracks, or the intersection of Highway 903 and Highway 301 Bypass, of which Amtrak (including its agents, investigators, or attorneys) is aware, identifying the person(s) involved, the date and the nature of the close call or near accident, and all documentation of the close call or near accident. Def.'s Mot., Ex. A [DE-33-1] at 5. Amtrak has objected on the grounds the request is overly broad, overly burdensome, irrelevant and unreasonably calculated to lead to the discovery of admissible evidence. *Id.* According to Amtrak, it has inquired into prior close calls or near accidents (as defined as trains nearly colliding with motor vehicles) at the subject crossing in the year prior to the accident and did not identify any responsive information. *Id.* Defendant agreed to limit its request to any responsive information since 2000. Def.'s Mem. [DE-34] at 3. Amtrak responds that it and CSXT have provided all documents related to calls reporting an emergency, perceived emergency, stopped vehicle, close call or near accident at the subject crossing since 2009. Pls.' Mem. [DE-38] at 5. Additionally, CSXT has produced records of oversized loads crossing the Highway 903 crossing since 2009. *Id.* Plaintiffs contend that additional discovery on this issue is overly broad and unduly burdensome. *Id.* at 5-6.

5

Defendant takes the position that Amtrak knew of or should have known of prior close calls or near accidents at the subject crossing, that such accidents could occur in the future, and that Amtrak failed to take measures to prevent such accidents. Def.'s Mot., Ex. E [DE-33-5] at 2; Answer & Countercls. [DE-10] at 16-19. Thus, the request seeks materials relevant to Defendant's claims and within the scope of discovery. However, the court finds that the temporal scope of the request, which as modified by Plaintiff seeks responsive information since 2000 (or 15 years prior to the accident at issue), is overly broad. Amtrak and CSXT have produced responsive information dating back to 2009, noting that CSXT upgraded its document storage system in 2009 and that documents created prior to that time could not be transferred from the mainframe making them "extremely difficult and potentially costly to access." Pls.' Mem. [DE-38] at 5, n.3. Plaintiffs have provided no support for this conclusory assertion regarding the documents being "extremely difficult and *potentially* costly to access." *Id.* (emphasis added); *see JAK Prods., Inc. v. Robert Bayer*, No. 2:15-CV-00361, 2015 WL 2452986, at *10 (S.D. W. Va. May 22, 2015) (unpublished) ("To prevail on the grounds of burdensomeness or breadth, the objecting party must do more to carry its burden than make conclusory and unsubstantiated arguments.") (citing *Bank of Mongolia v. M & P Global Financial Services, Inc.*, 258 F.R.D. 514, 519 (S.D. Fla. 2009) ("A party objecting must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome"); *Convertino v. United States Department of Justice,* 565 F. Supp. 2d 10, 14 (D.D.C. 2008) (the court will only consider an unduly burdensome objection when the objecting party demonstrates how discovery is overly broad, burdensome, and oppressive by submitting affidavits or other evidence revealing the nature of the

6

burden); *Cory v. Aztec Steel Building, Inc.*, 225 F.R.D. 667, 672 (D. Kan. 2005) (the party opposing discovery on the ground of burdensomeness must submit detailed facts regarding the anticipated time and expense involved in responding to the discovery which justifies the objection)); *Stoney Glen, LLC v. S. Bank & Trust Co.*, No. 2:13CV8-HCM-LRL, 2013 WL 5514293, at *3 (E.D. Va. Oct. 2, 2013) (unpublished) (citations omitted). Thus, Amtrak has failed to demonstrate that responding to this interrogatory is unduly burdensome or otherwise objectionable. Accordingly, the court sustains in part and overrules in part Amtrak's objections, and Amtrak shall produce any additional responsive documents from the period from 2005 to the date of the accident by no later than May 31, 2016.

Interrogatory No. 5 to Amtrak

Defendant seeks the identification of any and all phone calls made by any person to Amtrak, any emergency operator, whether employed by Amtrak or otherwise, any law enforcement representative, or by any representative of the North Carolina Department of Transportation related to an emergency or any perceived emergency at the subject crossing prior to the accident. Def.'s Mot., Ex. A [DE-33-1] at 5. Amtrak responded that on the day of the collision it received no calls about the crossing before the accident occurred and, as to other occasions, Amtrak objected that the request is overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. *Id.* Defendant agreed to limit its request to any responsive information since 2000. Def.'s Mem. [DE-34] at 3-4. Amtrak responds that it and CSXT have provided all documents related to calls reporting on emergency, perceived emergencies, stopped vehicles, close calls or near accidents at the subject crossing since 2009. Pls.' Mem. [DE-38] at 5. Additionally, CSXT has produced records of oversized loads crossing the Highway 903 crossing

7

since *2009*, and Plaintiffs contend additional discovery on this issue is overly broad and unduly burdensome. *Id.* at 5-6.

Defendant takes the position that Amtrak received prior emergency calls regarding the subject crossing prior to the day of the accident, that Amtrak knew or should have known that an emergency situation could present itself in the future, and that Amtrak needed to take precautions in the event of an emergency. Def.'s Mot., Ex. E [DE-33-5] at 1-2; Answer & Countercls. [DE-10] at 16-19. The court concludes that the request seeks materials relevant to Defendant's claims. However, as explained above, the time period of 15 years prior to the accident is overly broad. Amtrak has failed to demonstrate the interrogatory is otherwise objectionable. Accordingly, the court sustains in part and overrules in part Amtrak's objections, and Amtrak shall produce any additional responsive documents since 2005 to the date of the accident by no later than May 31, 2016.

Interrogatory No. 8 to Amtrak

Defendant seeks the identity of all prior accidents at any railroad crossing in the United States involving a collision between an Amtrak train and a tractor-trailer or any other oversized vehicle from 1980 to the present. Def.'s Mot., Ex. A [DE-33-1] at 6. Amtrak objected on the grounds the request is overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. *Id.* Subject to its objections, Amtrak responded there were no prior accidents at the subject crossing involving an Amtrak train and a tractor-trailer or any oversized vehicle. *Id.* Defendant asserts that Amtrak has been involved repeatedly in accidents at railroad crossings involving tractor-trailers or oversize vehicles throughout the United States and has failed to take adequate precautions to guard against future accidents. Def.'s Mem. [DE-34] at 4; Def.'s Mot., Ex. E [DE-33-5] at 3. Defendant agreed to limit the scope of this interrogatory to the time

8

period from 2000 to the present. Def.'s Mem. [DE-34] at 4.

As to discovery regarding prior accidents and incidents at the subject crossing, Amtrak argues that such discovery should be precluded due to the prejudicial nature of other accidents and the requirement that material sought must be substantially similar to the subject accident to be probative. Pls.' Mem. [DE-38] at 3-4. Regarding accidents at other locations, Amtrak argues there can be no significant identity of circumstances between the accidents because they occur at other locations. *Id.* at 4-5. According to Amtrak, any accident at a different location, involving a different type of vehicle, under different circumstances is immaterial to any alleged hazard at the subject crossing. *Id.* at 5. The authority cited by Amtrak concerns the admission of such evidence at trial rather than its discovery. *Id.* at 3-4 (citing cases). The Federal Rules expressly provide that "[i]nformation within th[e] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "When interpreting the relevance of discovery regarding other accidents, the court need only find that the circumstances surrounding those accidents are similar enough to the accident at issue that discovery concerning those incidents is *reasonably* calculated to lead to the disclosure of substantially similar occurrences." *Madden v. Antonov, AV*, No. 4:12CV3090, 2014 WL 4295288, at *3 (D. Neb. Aug. 31, 2014) (unpublished) (citations omitted).

The court agrees with Plaintiffs that this request is overly broad in both geographic and temporal scope, but that prior accidents at any railroad crossing in North Carolina involving a collision between an Amtrak train and a tractor-trailer or any other oversized vehicle since 2005 to the date of the accident are sufficiently similar for the purpose of discovery based on the allegations and factors presented by the parties. Accordingly, Amtrak's objection is sustained in part and overruled in part and Amtrak shall supplement its response to the request by no later than May 31,

9

2016.

## Interrogatory Nos. 11 & 12 to Amtrak

Defendant seeks the identification of all standards, practices, procedures, policies, rules, and training materials of every type which concern the design, inspection, evaluation, maintenance, and safety of (1) the subject crossing or the subject tracks, and (2) railroad crossings traversed by oversize or overweight vehicles or vehicles or rigs of the same or similar length to Defendant's vehicle. Def.'s Mot., Ex. A [DE-33-1] at 7. Defendant seeks further for each item identified the date it was implemented and how it was communicated to Amtrak's agents or employees. *Id.* Amtrak objected to the request on the grounds the request is overly broad and unduly burdensome, but referred to its response to Defendant's Request for Production No. 26 and the Rules of Practice for Passenger Service, 49 C.F.R. §§ 200-299. *Id.* Notwithstanding its objections, Amtrak made available to Defendant's counsel some rules it deemed relevant, as well as the table of contents, which counsel reviewed. Pls.' Mem. [DE-38] at 6. Amtrak points out Defendant's counsel has not otherwise identified particular rules it wants produced and that Defendant's counsel marked some of the requested rules as deposition exhibits, demonstrating Defendant already had access to them. For its part, Defendant argues it should not have to rely on only the rules that Amtrak deems to be relevant. Def.'s Mot., Ex. E [DE-33-5] at 4. The court finds the substance of the material sought is relevant and discoverable, but that Defendant's request is overly broad in that it lacks a temporal limit. Accordingly, the court sustains in part and overrules in part Amtrak's objections and Amtrak shall produce responsive materials in effect at the time of the accident by no later than May 31, 2016.

## Interrogatory Nos. 13-15 to Amtrak

Defendant seeks a description of "Positive Train Control," including the purpose of this

10

technology, its functionality and effectiveness, whether its implementation would have prevented any accident of any nature involving an Amtrak train, and whether its implementation is predicted to limit or prevent any accident of any nature involving an Amtrak train. Def.'s Mot., Ex. A [DE-33-1] at 8. Defendant also seeks the identification of every Amtrak train in the United States equipped with "Positive Train Control" on or before March 9, 2015, as well as the reasons "Positive Train Control" was installed on these Amtrak trains. *Id.*

Amtrak objects to these interrogatories on the grounds each is overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. *Id.* Amtrak responds further that it was not required by either Congress or the Federal Railroad Administration to implement Positive Train Control at the time of the collision and therefore the purpose, functionality, effectiveness, and/or its implementation of Positive Train Control is irrelevant and inapplicable to the subject incident. *Id.* Amtrak describes Positive Train Control as a federally-mandated technology that every railroad must implement in the future. *See* 49 U.S.C. § 20157.[1] It appears uncontested that Positive Train Control was not required at the time and location of the collision. Pls.' Mem. [DE-38] at 6.

According to Defendant, Positive Train Control is a technology which can alert trains to obstacles ahead on the tracks including at grade crossings. Def.'s Mem. [DE-34] at 4. Defendant

---

[1] By statute,

> [n]ot later than 90 days after the date of enactment of the Positive Train Control Enforcement and Implementation Act of 2015, each Class 1 railroad carrier and each entity providing regularly scheduled intercity or commuter rail passenger transportation shall submit to the Secretary of Transportation a revised plan for implementing a positive train control system by December 31, 2018 . . . .

49 U.S.C. § 20157

takes the position that the collision could have been prevented had Amtrak implemented Positive Train Control. Def.'s Mot., Ex. E [DE-33-5] at 3; Def.'s Mem. [DE-34] at 4-5, n.1. In particular, Defendant claims Amtrak breached its duty to implement technologically feasible systems to prevent collisions with vehicles attempting to traverse the subject crossing. Answer & Countercls. [DE-10] ¶¶ 21-25. These interrogatories are directed to materials related to Defendant's claim of negligence and gross negligence based on Amtrak's failure to implement technologically feasible warning, control, and movement systems. The broad scope of discovery encompasses discovery requests relevant to Defendant's claim, irrespective of whether that claim may be a successful one. Amtrak's objections are overruled and it shall respond by no later than May 31, 2016.

Interrogatory No. 16 to Amtrak

Defendant seeks to identify any Amtrak employee who was working on the Amtrak train on the date of the accident that had ever been working on a different train that was involved in an accident or close call occurring prior to March 9, 2015. Def.'s Mot., Ex. A [DE-33-1] at 8. Defendant seeks a description of the accident or close call with particularity, including, but not limited to, identifying its date, location, and any documents to the accident or close call. *Id.* Amtrak has objected on the grounds the request is overly broad, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and has been propounded to embarrass, annoy, harass and oppress Amtrak and/or its employees. *Id.* Defendant responds that whether Amtrak employees Charles Akers (the engineer), Jucinto Dufour (a qualifying conductor who was in the locomotive at the time of the subject accident), and Keenan Talley (the conductor) were working on trains involved in prior accidents or close calls is discoverable, as such information could show a pattern of poor job performance or an awareness of potential hazards at grade crossings. Def.'s Mem. [DE-34] at 5;

12

Def.'s Mot., Ex. E [DE-33-5] at 3. Plaintiffs state that Akers and Dufour were deposed by Defendant and that Amtrak has produced their personnel files and disciplinary records. Pls.' Mem. [DE-38] at 3. However, a party is not limited to utilizing only one form of discovery, and the fact that Defendant has deposed these individuals does not preclude this inquiry. The court agrees with Defendant and overrules Amtrak's objections. Amtrak shall respond by no later than May 31, 2016.

Request for Production No. 4 to Amtrak

Defendant seeks all onboard locomotive data including, but not limited to, all Locomotive Digital Video Recorder (LDVR) video footage from the Amtrak train on the day of the accident. Def.'s Mot., Ex. B [DE-33-2] at 4. According to Defendant, Plaintiff has produced a portion of the requested video corresponding to a period of time prior to the accident. Def.'s Mem. [DE-34] at 5. Defendant seeks video footage commencing from when the train was in Raleigh at which time Charles Akers, the train engineer, began operating the train, until the time of the accident. *Id.* Plaintiff responds that (1) it has produced all data from the train regarding its approach to the Highway 903 crossing, including the train's speed, throttle position, brake applications, whistle and bell usage, as well as the view from the train as recorded by the LDVR, (2) Defendant has already had the opportunity to depose Akers and has questioned him extensively about the accident, and (3) further discovery is overly broad and not relevant. Pls.' Mem. [DE-38] at 7. Defendant states further, however, that Akers testified in his deposition that he sounded the train horn soon after the line of vehicles came into view on the video at a distance of a quarter mile from the railroad crossing, in violation of federal and Amtrak rules for engineers, and that he did not see traffic on the day of the accident but instead sounded the horn because he sometimes unilaterally sounds his horn at random locations as he approaches grade crossings. Def.'s Mem. [DE-34] at 5-6. Defendant seeks

13

to explore whether Akers frequently violated safety rules by sounding his horn earlier than required and whether Amtrak endorsed this practice or whether Akers did so on only this occasion. *Id.* at 6. The court finds the request seeks materials related to the claims made by Defendant and that Amtrak has failed to demonstrate responding to the request is otherwise objectionable. Accordingly, Amtrak shall respond by no later than May 31, 2016.

Request for Production No. 5 to Amtrak

Defendant seeks the train's entire event recorder printout from the day of the accident. Def.'s Mot., Ex. B [DE-33-2] at 4. In particular, Defendant seeks the train's event recorder printout from the time the train was in Raleigh until the accident rather than the approximate one minute and seven seconds prior to the accident, which has apparently been produced. Def.'s Mem. [DE-34] at 6; Def.'s Mot., Ex. E [DE-33-5] at 4. According to Defendant, the requested documents contain numerous pieces of information, including the date, time, distance from the location where the train ultimately stopped at specific times; the train's speed at specific times and locations; the specific time and location of the train when Mr. Akers blew the horn and the number of times the horn was blown on each occasion; whether and when Mr. Akers was using train's throttle, idling, or had the throttle off; and whether and when Mr. Akers applied the emergency brakes. Def.'s Mem. [DE-34] at 6. Amtrak responds that it has produced all data from the train regarding its approach to the Highway 903 crossing, including the train's speed, throttle position, brake applications, whistle and bell usage as well as the view from the train as recorded by the LDVR. Pls.' Mem. [DE-38] at 7. According to Defendant, the requested material is important because it would provide the train's speed and the horn patterns as it approached other grade crossings prior to the collision, which would be probative of Akers' pattern and practice of operating trains on approaches to grade crossings at

14

the time of the collision. Def.'s Mem. [DE-34] at 6-7. The court finds the materials requested to be relevant to Defendant's claim and that Plaintiff has failed to demonstrate grounds on which to deny the request. Accordingly, Amtrak shall respond by no later than May 31, 2016.

### Request for Production No. 26 to Amtrak

Defendant seeks all Amtrak Operating Rules, General Orders, Special Instructions, and safety rules applicable to trains operating on the CSXT North End Subdivision. Def.'s Mot., Ex. B [DE-33-2] at 8. Amtrak objects on the grounds the request is overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. *Id.* Amtrak notes the breadth of the request includes any such materials that have ever been implemented by Amtrak. Pls.' Mem. [DE-38] at 6. Amtrak responds that it recognizes some of its rules would be relevant and it appears from Amtrak's objections and response brief that Amtrak has made available the following documents in effect at the time of the accident: Amtrak Safety Instructions for Transportation Employees, Air Brake and Train Handling Rules and Instructions, System General Road Foreman Notices, and General Code of Operating Rules. *Id.* For the reasons stated in the ruling on Interrogatory Nos. 11 and 12, Amtrak's objection is sustained in part and overruled in part, and to the extent there remain materials in effect at the time of the accident that are responsive to the request, such materials shall be produced no later than May 31, 2016.

### Request for Production No. 28 to Amtrak

Defendant seeks all materials used to train all Amtrak employees that were working on the Amtrak train on the day of the accident. Def.'s Mot., Ex. B [DE-33-2] at 8. According to Defendant, Amtrak has produced training records for Charles Akers, the engineer, and Jacinto Dufour, the qualifying conductor. Def.'s Mem. [DE-34] at 7. In exchange for limiting this request

15

to the training records of Akers and Dufour, Defendant seeks records evidencing the training received generally by Amtrak engineers to confirm that Akers and Dufour received proper training. *Id.* Amtrak explains in its response brief that training records for Engineer Akers are representative of the training required to be completed by all Amtrak engineers. Pls.' Mem. [DE-38] at 7. Based on Defendant's modification of the request and the description of the response provided by Amtrak in its brief, it appears the response is complete and Amtrak's objection is sustained.

### Request for Production No. 30 to Amtrak

Defendant seeks all records, recordings and/or transcriptions of any calls and/or other notifications made by CSXT to Amtrak prior to the accident that warned that a vehicle was on the tracks at the subject crossing. Def.'s Mot., Ex. B [DE-33-2] at 9. Amtrak responds there are no responsive documents for March 9, 2015, and otherwise objects to the request as it pertains to other occasions on the grounds it is overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. *Id.* In agreeing to modify the scope of the request to 2000 to the date of the accident, Defendant argues that such prior calls would impute knowledge to Amtrak and CSXT that this scenario could occur in the future and that CSXT and Amtrak needed to take appropriate precautions to prevent an accident. Def.'s Mem. [DE-34] at 7; Def.'s Mot., Ex. E [DE-33-5] at 5. Amtrak responds that it has produced all documents relating to calls reporting an emergency, perceived emergency, stopped vehicle, close call, or near accident at the Highway 903 crossing since 2009. Pls.' Mem. [DE-38] at 5-6. Additionally, CSXT has produced records of oversized loads crossing the Highway 903 crossing since 2009, but changed its documents storage system from a mainframe system in 2009 and all documents prior to that time are on the mainframe, which CSXT contends is difficult and potentially costly to access. *Id.* at 5 n.3.

16

Despite Plaintiffs' production of some responsive material, for the reasons stated above in ruling on Interrogatory Nos. 4 and 5, Amtrak's objection is sustained in part and overruled in part, and Amtrak shall produce responsive material since 2005 to the date of the accident by no later than May 31, 2016.

Request for Production No. 31 to Amtrak

Defendant seeks all other documents related to any phone call made by any entity or person to Amtrak and/or any of Amtrak's employees related to an emergency or perceived emergency at the subject crossing. Def.'s Mot., Ex. B [DE-33-2] at 9. Amtrak responds there are no responsive documents for March 9, 2015, and otherwise objects to the request as it pertains to other occasions on the grounds it is overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. *Id.* In agreeing to modify the scope of the request to 2000 to the date of the accident, Defendant argues that emergency calls received by Amtrak regarding the crossing prior to the day of the accident are discoverable. Def.'s Mem. [DE-34] at 7. Defendant takes the position that Amtrak received emergency calls regarding the subject crossing prior to the day of the accident and that Amtrak knew or should have known that an emergency situation could present itself in the future and that Amtrak needed to take precautions in the event of an emergency. Def.'s Mot., Ex. E [DE-33-5] at 5. Amtrak responds that it has produced all documents relating to calls reporting an emergency, perceived emergency, stopped vehicle, close call, or near accident at the Highway 903 crossing since 2009. Pls.' Mem. [DE-38] at 5-6. Additionally CSXT has produced records of oversized loads crossing the Highway 903 crossing since 2009. *Id.* For the reasons previously stated with respect to Interrogatory Nos. 4 and 5 and Request for Production No. 30, Amtrak's objection is sustained in part and overruled in part, and

17

Amtrak shall produce responsive material since 2005 to the date of the accident by no later than May 31, 2016.

<u>Request for Production No. 35 to Amtrak</u>

Defendant seeks all investigative reports, memoranda, studies, written analyses, communications, and/or other documents generated by Amtrak in connection with prior close calls or near accidents occurring at the grade crossing where the accident occurred. Def.'s Mot., Ex. B [DE-33-2] at 10. Amtrak objects on the grounds the request is overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. *Id.* Amtrak responds it has inquired into prior close calls or near accidents (as defined as trains nearly colliding with motor vehicles) at the subject crossing in the year prior to the accident and there were none. *Id.* In its response brief, Amtrak states that it has produced all documents relating to calls reporting an emergency, perceived emergency, stopped vehicle, close call, or near accident at the Highway 903 crossing since 2009. Pls.' Mem. [DE-38] at 5-6. Additionally, CSXT has produced records of oversized loads crossing the Highway 903 crossing since 2009. *Id.* In agreeing to modify the scope of the request to 2000 to the date of the collision, Defendant argues prior close calls or near accidents at the crossing from 2000 to the date of the collision are discoverable. Def.'s Mem. [DE-34] at 7-8.

Defendant's position is that Amtrak knew or should have known of prior close calls or near accidents at the subject crossing and that such accidents could occur in the future, and that Amtrak failed to take appropriate measures to prevent against such accidents. Def.'s Mot., Ex. E [DE-33-5] at 5. Thus, the request seeks materials relevant to the claims or defenses asserted in this case, and for the reasons stated above with respect to Interrogatory Nos. 4 and 5 and Requests for Production Nos. 30 and 31, Amtrak's objection is sustained in part and overruled in part, and Amtrak shall

18

produce responsive material since 2005 to the date of the accident by no later than May 31, 2016.

Request for Production No. 36 to Amtrak

Defendant seeks all investigative reports, memoranda, studies, written analyses, communications, and/or other documents, including lawsuits, related to prior accidents at any railroad crossing involving a collision between an Amtrak train and a tractor-trailer or any other oversized vehicle from 1980 to the present. Def.'s Mot., Ex. B [DE-33-2] at 10. Defendant contends Amtrak has been repeatedly involved in accidents at railroad crossings involving tractor-trailers or oversized vehicles throughout the United States since at least 1980. *Id.*, Ex. E [DE-33-5] at 5. Amtrak objects on the grounds the request is overly broad, unduly burdensome, subject to attorney-client privilege and irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. *Id.*, Ex. B [DE-33-2] at 10. Defendant argues that Amtrak has refused to produce any documents to a request modified in scope relating to accidents between Amtrak trains and tractor-trailers or oversized vehicles at other crossings in the United States since 2000. Def.'s Mem. [DE-34] at 8. Defendant contends that these records would demonstrate Amtrak's knowledge of the potential hazards associated with oversized vehicles traversing railroad crossings and, in turn, precautions Amtrak should have taken to prevent collisions with such vehicles. *Id.*

Amtrak responds it has no documents in its possession relating to prior accidents at Highway 903 crossing in addition to what has already been produced. Pls.' Mem. [DE-38] at 3. Amtrak argues further that such discovery should be precluded due to the prejudicial nature of other accidents and the requirement that material sought must be substantially similar to the subject accident to be probative. *Id.* at 3-4. Regarding accidents at other locations, Amtrak argues there can be no significant identity of circumstances between the accidents because they occur at other

19

locations. *Id.* at 4-5. According to Amtrak, any accident at a different location involving a different type of vehicle for example, under different circumstances is therefore immaterial to any alleged hazard at the subject crossing and would fail to place Amtrak on any notice, as Defendant argues. *Id.* at 5.

The import of Amtrak's position, as demonstrated by the authority cited, appears to concern the admission of such evidence at trial, rather than its discovery. *Id.* at 3-4 (citing cases). For the reasons stated in the ruling on Interrogatory No. 8, Amtrak's objection is sustained in part and overruled in part and Amtrak shall produce responsive material limited to prior accidents at any railroad crossing in North Carolina involving a collision between an Amtrak train and a tractor-trailer or any other oversized vehicle since 2005 to the date of the accident by no later than May 31, 2016.

Request for Production No. 40 to Amtrak

Defendant seeks all documents which memorialize or are otherwise related to conversations or discussions between Amtrak and/or its agents and any federal, state, or local governmental agency in the past ten years regarding (1) the use of any crossing in the state by tractor-trailer and/or oversized vehicles and the frequency of use of the crossing by these vehicles; and/or (2) accidents or near misses between motor vehicles and trains at any crossing in the state of North Carolina. Def.'s Mot., Ex. B [DE-33-2] at 11. Amtrak objects on the grounds the request is overly broad, unduly burdensome, irrelevant, and not reasonably calculated to the discovery of admissible evidence. *Id.* Defendant argues that such records demonstrate Amtrak's knowledge of the potential hazards associated with oversized loads traversing railroad crossings and in turn precautions Amtrak should have taken to prevent collisions with such vehicles. Def.'s Mem. [DE-34] at 8; Def.'s Mot., Ex. E [DE-33-5] at 5. Amtrak argues the request is overly broad in that it captures records of any

20

communications between Amtrak and any other government entity regarding tractor-trailers and/or other oversized vehicles traversing all railroad crossings in North Carolina including reports of accidents or near misses between "motor vehicles" and trains. Pls.' Mem. [DE-38] at 7. Amtrak states that it has made a reasonable search for any such communications related to the Highway 903 crossing and there were none. The court agrees that the request is overly broad as it pertains to "motor vehicles," and will limit the request to accidents or near misses between tractor-trailers and/or other oversized vehicles and trains. Accordingly, Amtrak's objections are sustained in part and overruled in part and it shall respond by no later than May 31, 2016.

<u>Request for Production Nos. 43-45 to Amtrak</u>

Defendant seeks (1) all memoranda, communications, studies, written analyses, evaluations, and/or other documents related to "Positive Train Control," including, but not limited to, the purpose of technology, its functionality, its effectiveness, whether its implementation would have prevented any accident of any nature involving an Amtrak train, and whether its implementation is predicted to limit or prevent any accident of any nature involving Amtrak trains, Def.'s Mot., Ex. B [DE-33-2] at 12; (2) all memoranda, communications, and/or other documents related to Amtrak's decision, analysis, and/or consideration of implementing or not implementing "Positive Train Control" on Amtrak trains, *id.* at 13; and (3) all documents identifying the Amtrak trains in the United States which were equipped with "Positive Train Control" on or before March 9, 2015, *id.*

Amtrak objects to these requests on the grounds that they are overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. *Id.* at 12-13. Amtrak responds further that it was not required by either Congress or the Federal Railroad Administration to implement Positive Train Control at the time of the collision and

21

therefore the purpose, functionality, effectiveness and/or its implementation of Positive Train Control is irrelevant and inapplicable to the subject incident. *Id.* Amtrak describes Positive Train Control as a federally-mandated technology that each Class I railroad carrier must implement in the future. *Id.*; *see* 49 U.S.C. § 20157. For the reasons stated with respect to Interrogatory Nos. 13-15, Amtrak's objections are overruled and it shall respond by no later than May 31, 2016.

Request for Production No. 58 to Amtrak

Defendant seeks all reports, including, but not limited to, any and all reports created by Amtrak, CSXT, the North Carolina Department of Transportation, the Federal Railroad Administration, the National Transportation Safety Board, the North Carolina Highway Patrol, and any other law enforcement or governmental agency, that were created as a result of or related to the accident that occurred on September 10, 2015, between Amtrak train 80, The Carolinian, and a tractor-trailer in or near Northampton County, North Carolina. Def.'s Mot., Ex. B [DE-33-2] at 15. Amtrak objects on the grounds the request is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. *Id.* at 16. Defendant contends the September 10 accident and subject accident each involved the Amtrak Train 80, The Carolinian, and a tractor-trailer or oversized vehicle and that any report related to the accident is relevant and reasonably calculated to lead to the discovery of admissible evidence. Def.'s Mot., Ex. E [DE-33-5] at 6; Def.'s Mem. [DE-34] at 8. Defendant further contends that any changes in policy or identified preventability analyses as a result of the September 10, 2015 grade-crossing collision would be relevant to the instant case and documents evidencing such changes should be produced. Def.'s Mem. [DE-34] at 8-9.

Amtrak responds that the prior accident occurred at a different location and involved a regular 5-axle tractor trailer as opposed to the 164 foot long 13-axle superload involved in the instant

22

case. Pls.' Mem. [DE-38] at 7. Amtrak argues the subsequent incident cannot meet the predicate of substantial identity of circumstances, nor could it provide prior notice of anything. *Id.* at 7-8. The court finds Amtrak's position too narrow and that the prior accident is sufficiently related for purposes of discovery. Amtrak's objections to providing responsive material to this request are overruled and it shall do so by no later than May 31, 2016.

Interrogatory No. 2 to CSXT

Defendant seeks the identity and description of the last upgrade to the warning devices at the subject crossing prior to the accident, including, but not limited to, what upgrades were completed, why the upgrades were completed, whether CSXT was required to make such upgrades and when the upgrades were completed. Def.'s Mot., Ex. C [DE-33-3] at 3. CSXT responds that the last upgrade installed at the crossing was the replacement of an original model Phase Motion Detector ("PMD-1") with a newer model PMD-3 in 2005. *Id.*; Pls.' Mem. [DE-38] at 8. CSXT explains that the Phase Motion Detector is the equipment that detects an approaching train and causes the warning devices to activate. Pls.' Mem. [DE-38] at 8. CSXT explains further that the upgrade was completed in its normal course of business, the crossing signal plans were revised to reflect the new PMD-3, and that no work order, invoice, or other such document was generated as a result of this upgrade. *Id.* It appears to the court that CSXT has fully responded to this interrogatory.


Interrogatory No. 4 to CSXT

Defendant seeks the identity of the train tracks in the United States owned by CSXT on which "Positive Train Control" was installed on or before March 9, 2015. Def.'s Mot., Ex. C [DE-33-3] at 4. Defendant contends the information could demonstrate the feasibility of installing

23

Positive Train Control at the subject crossing and the instances where Positive Train Control has prevented accidents on CSXT tracks at other crossings. Def.'s Mem. [DE-34] at 9. CSXT objects on the grounds the interrogatory is overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Def.'s Mot., Ex. C [DE-33-3] at 4. CSXT responds further that Congress and the Federal Railroad Administration have addressed the subject matter of Positive Train Control and that this technology was not required of CSXT or any other railroad at the time of the collision. *Id.* According to CSXT, positive train control, its purpose, functionality, effectiveness and/or its implementation is irrelevant and inapplicable to the incident. *Id.* It is Defendant's position that had CSXT equipped the subject crossing with Positive Train Control technology the accident would not have occurred. Def.'s Mot., Ex. E [DE-33-5] at 6. Defendant has asserted a counterclaim of negligence based in part on its theory that CSXT failed to implement feasible controls at the crossing that could prevent the accident. Answer & Countercls. [DE-10] at 18-19. The court finds that the interrogatory seeks information related to Defendant's claims and is not otherwise objectionable, and CSXT shall respond by no later than May 31, 2016.

### Request for Production No. 2 to CSXT

Defendant seeks all documents evidencing or relating to phone calls made prior to March 9, 2015, to the emergency number (1-800-232-0144) posted at the subject crossing and any responses to such calls. Def.'s Mot., Ex. D [DE-33-4] at 3. Defendant argues that documents related to all calls to the referenced number will demonstrate the frequency of such calls, the responsiveness of CSXT to such calls, and the overall effectiveness of calling the emergency number, including its ability to prevent accidents. Def.'s Mem. [DE-34] at 9; Def.'s Mot., Ex. E [DE-33-5] at 6. CSXT states that it has produced all documents relating to calls reporting an emergency, perceived

24

emergency, stopped vehicle, close call, or near accident at the Highway 903 crossing since 2009. Pls.' Mem. [DE-38] at 5. CSXT explains that it upgraded its document storage from a mainframe in 2009, and that all documents created or gathered prior to 2009 could not be transferred to the new system and remain in the mainframe, which would be extremely difficult and potentially costly to access. Pls.' Mem. [DE-38] at 5 n.3. For the reasons stated above with respect to Interrogatory Nos. 4 and 5 and Requests for Production Nos. 30, 31 and 35, CSXT's objection is sustained in part and overruled in part, and it shall produce responsive material for the period since 2005 to the date of the accident by no later than May 31, 2016.

### Request for Production Nos. 3 & 6 to CSXT

Defendant seeks all documents generated as a result of the last upgrade to the warning devices at the subject crossing and all photographs of the subject crossing prior to the accident. Def.'s Mot., Ex. D [DE-33-4] at 3-4. CSXT has asserted a privilege under 23 U.S.C. § 409 and otherwise objects on the grounds the request is overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. *Id.* Defendant argues CSXT has failed to provide an explanation regarding the objection or a privilege log, and that the court should require CSXT to withdraw its objection and produce responsive documents or explain its objection and provide a privilege log. Def.'s Mem. [DE-34] at 9-10; Def.'s Mot., Ex. E [DE-33-5] at 6-7.

Title 23 section 409 provides that

[n]otwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 148 of this title or for the purpose of developing any highway safety construction improvement project

25

which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

23 U.S.C. § 409. As with all evidentiary privileges, section 409 must be narrowly construed. *Pierce Cnty. v. Guillen*, 537 U.S. 129, 144 (2003) (concluding that courts should interpret section 409 narrowly because it "impede[s] the search for the truth"). The party seeking to invoke the privilege bears the burden of establishing its applicability. *Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 181 (3d Cir. 2013); *In re Grand Jury Investigation*, 918 F.2d 374, 385 n. 15 (3d Cir.1990) ("[A] party who asserts a privilege has the burden of proving its existence and applicability."); *Ross v. Burlington N. & Santa Fe Ry. Co.*, 63 F. Supp. 3d 1330, 1332 (W.D. Okla. 2014).

The issue is whether the information sought consists of materials compiled or collected pursuant to the sections of Title 23 specifically identified in section 409. *Ross*, 63 F. Supp.3d at 1332. Other courts have observed that section 409 may be divided into two distinct parts: "[u]nder the first, 'reports, data and the like' are excluded 'if they were compiled or collected to identify, evaluate, or plan the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 148,'" and "[t]he second part exclude[s] such documents if they were compiled or collected to develop 'any highway safety construction improvement project which may be implemented using Federal-aid highway funds.'" *Id.* at 1332-33 (citing *Zimmerman*, 706 F.3d at 181 (quoting 23 U.S.C. § 409)).

In response to the instant motion, CSXT provided a privilege log listing the documents withheld pursuant to section 409. Pls.' Mem., Ex. D [DE-38-4]. The log describes the materials as "Photographs of 903/301 Traffic Signal and Crossing," "Railroad Crossing Inventory Form (typed

26

and handwritten) incl. photographs," "Railroad Crossing Inventory Form with Photographs (typed and handwritten) incl. Railway-Highway Grade Crossing Inventory Section Field Note Sketch/Checklist," "Crossing Traffic Survey (with photographs)" from 2010 and 2014, and "Revisions to signal plans re installation of PMD-3 (4pp)." *Id.* (emphasis in the original). According to CSXT, all of the prior photographs of the Highway 903 crossing were either taken by the NCDOT or were taken as part of a crossing study requested by the NCDOT, and were compiled or collected as part of the NCDOT's general examination of all railroad crossings in the state for the purpose of identifying, evaluating, or planning the safety enhancements of potential accident sites, hazardous roadway conditions, or railway-highway crossings pursuant to federal programs, or for the purpose of developing highway safety construction improvement projects which could be implemented utilizing federal-aid highway funds. *Id.* [DE-38] at 8.

In support of this assertion, CSXT cites the affidavit of Andrew R. Thomas, a licensed professional engineer employed by the North Carolina Department of Transportation, Rail Division, as a Crossing Inventory Manager. *Id.*, Ex. E [DE-38-5] Aff. of Andrew R. Thomas. According to Thomas, the Rail Division of the NCDOT is responsible for the coordination, management, and implementation of publicly-funded safety projects at rail-highway grade crossings throughout North Carolina. *Id.* ¶ 3. The Rail Division has developed an evaluation system, approved by the Federal Highway Administration, to determine which crossings have the highest need for safety improvements, which provides a process for federal funding of railroad crossing warning devices. *Id.* Thomas' affidavit describes the warning devices installed at the subject crossing and that federal funds were used to install warning devices. *Id.* ¶¶ 4-6. Thomas describes a project installing gates and bells at the subject crossing in the 1970s, funded by the federal government pursuant to 45

27

U.S.C. § 130 through the Federal Highway Administration, which the NCDOT inspected and approved upon completion. *Id.* ¶ 7. The affidavit refers to an Exhibit A as a true and correct copy of the Federal Highway Administration Letter of Authorization for expenditure of federal funds on the Highway 903 crossing, which was not attached. *Id.* ¶ 8. Thomas describes another project at the crossing involving the NCDOT to upgrade the flashing lights by replacing the existing eight-inch red lenses with larger and more visible twelve-inch red lenses, which was paid for in part with federal funds and which the NCDOT inspected and approved upon completion. *Id.* ¶ 9. The affidavit refers to an Exhibit B as a true and correct copy of the final inspection form for the project to upgrade the flashing lights, which was not attached. *Id.* ¶ 10. Thomas further explains that at an adjacent intersection, the Highway 903 traffic signal with railroad signal preemption was installed in the late 1980s. *Id.* ¶ 12. "Railroad signal preemption" is the term used to describe the interaction between the traffic signal and the railroad crossing signal and it functions as follows:

> When a train approaches a crossing and enters the crossing signal circuit, it activates the crossing warning devices. Where railroad signal preemption is used, the circuitry will also preempt or override the usual operation of the traffic signal at the adjacent intersection. The traffic signal then operates to clear any vehicles in the crossing area and to stop approaching vehicles from coming on to the crossing. Railroad signal preemption does not alter the operation of the railroad crossing warning devices in any way.

*Id.* This project was assigned State Project Number 6.307001 and it appears to have been paid for with state funds, but is the type of safety project was eligible for and could have been paid for with federal-aid highway funds. *Id.* Thomas explains he has reviewed the files maintained by the NCDOT rail division regarding the Highway 903 crossing and the Highway 903 traffic signal at the adjacent intersection and that everything in the NCDOT rail division files is compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancements of potential accident

28

sites, hazardous roadway conditions, or railway-highway crossings pursuant to federal programs, or for the purpose of developing highway safety construction improvement projects which could be implemented utilizing federal-aid highway funds. *Id.* ¶ 13.

The court finds that CSXT has established the section 409 privilege with respect to the withheld documents and the objection is, therefore, sustained.

Request for Production No. 8 to CSXT

Defendant seeks all documents identifying the train tracks in the United States owned by CSXT on which "Positive Train Control" was installed on or before March 9, 2015. Def.'s Mot., Ex. D [DE-33-4] at 4. CSXT objects on the grounds that the request is overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence and asserts that the Positive Train Control technology was not required of CSXT or any other railroad at the time of the accident and that its purpose, functionality, effectiveness and/or its implementation is irrelevant and inapplicable to the accident. *Id.* For the reasons stated in its ruling on the other discovery requests related to Positive Train Control, the court overrules the objection and CSXT shall respond by no later than May 31, 2016.

### III. CONCLUSION

For the reasons set forth above, Defendant's motion to compel [DE-33] is ALLOWED IN PART AND DENIED IN PART and Plaintiffs shall supplement their discovery responses by no later than May 31, 2016.

SO ORDERED, the 9th day of May 2016.

Robert B. Jones, Jr.
United States Magistrate Judge

29